IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 14-cv-01968-MSK

OLOYEA D. WALLIN, a.k.a. DONALD OLOYEA WALLIN, a.k.a. OLOYEA WALLIN,

     Applicant,

v.

MICHAEL MILLER, Warden of Crowley County Correctional Facility, and
JOHN SUTHERS, The Attorney General of the State of Colorado,

     Respondents.

---

## OPINION AND ORDER DENYING APPLICATION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254

---

     This matter is before the Court on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, ECF No. 1, filed *pro se* by Applicant Oloyea D. Wallin.  Respondents have filed an Answer to Application for Writ of Habeas Corpus, ECF No. 39, but Applicant has failed to reply to the Answer.  After reviewing the Application, the Answer, and the state court record, the Court FINDS and CONCLUDES that the Application should be denied and the case dismissed with prejudice.

## I.  BACKGROUND

     Applicant is challenging the validity of his conviction and sentence in Arapahoe County District Court case number 03CR2296.  The factual background of Applicant's crimes and convictions is summarized in the Colorado Court of Appeals' (CCA's) opinion addressing his direct appeal as follows:

> When defendant was released on parole in July 2003, I.M.,
> his ex-wife picked him up from prison and drove him to her
> apartment.  Defendant was upset because I.M. had given birth to

another man's child while he was in prison.  As I.M. reported events to the police, defendant took sixty dollars from her purse; beat her in the face and body with his fists, fracturing a bone next to her eye; and then left the apartment, driving off in her car.

The same day, defendant met with his parole officer and mentioned that he might have to take legal action against a girlfriend who was saying bad things about him.  A few minutes after defendant left the parole officer, the police contacted the parole officer about the incident at the apartment.  Within the next couple of days, the parole officer directed defendant to go to the police department and speak with a particular police officer. However, defendant did not go to the police department, but rather left a taped telephone message for the police officer.  Defendant was later arrested at his home.

Defendant was charged by information with second degree assault, pursuant to § 18-3-203(1)(g), C.R.S. 2006; first degree aggravated motor vehicle theft, pursuant to § 18-4-409(2), C.R.S. 2006; theft, pursuant to § 18-4-401, C.R.S. 2006; and, ultimately, a crime of violence, pursuant to § 18-1.3-406(2)(a)(I)(B), C.R.S. 2006.  A parole revocation complaint was filed effective the same day, and later, defendant's parole was revoked.

Soon after the charges were filed in this case, I.M. recanted all her allegations and filed a declaration with the court, stating that defendant did not hit her or steal her money or her car, that she was on morphine for a head injury when police officers spoke to her at the hospital, and that they "coerced" her to blame defendant for her injuries.  The prosecution endorsed an expert witness to testify at trial about domestic violence.

Defendant moved to suppress his taped message to the police as involuntary and to exclude the testimony of the prosecution's designated expert witness on domestic violence as irrelevant and unfairly prejudicial.  The trial court denied both motions.

I.M. did not appear for defendant's trial, and a warrant issued for her.  She was arrested and jailed overnight, and then she testified that defendant had assaulted her, but did not steal money from her purse or steal her car.  The prosecution's expert witness testified generally concerning why victims of domestic violence recant at trial.

The People dismissed the theft charge, and the jury found

defendant guilty of second degree assault and not guilty of motor vehicle theft.

At defendant's request, his trial counsel moved to withdraw before sentencing. The trial court declined defendant's request to appoint alternate defense counsel, and defendant appeared pro se at the sentencing hearing. The court sentenced him to fourteen years in the Department of Corrections.

*People v. Wallin*, No. 04CA1011, 1-3 (Colo. App. July 12, 2007).

The judgment of conviction was affirmed on direct appeal but remanded for resentencing, *id.*, at 17-18, which Applicant subsequently appealed, but dismissed, and then finally proceeded with a motion to recuse and a Colo. R. Crim. P. 35(c) motion. The recusal and Rule 35(c) motions were denied, Applicant appealed the denial, and the CCA denied the motions on appeal. *People v. Wallin*, No. 11CA0972 (Colo. App. Dec. 6, 2012). The CCA denied the motion to recuse for failure to demonstrate bias and the Rule 35(c) motion as successive. *Id.* The Colorado Supreme Court CSC denied Applicant's petition for writ of certiorari on June 16, 2014, in the collateral proceedings. *See People v. Wallin*, 2013SC739 (Colo. June 16, 2014). This Application was filed on July 15, 2014.

Applicant raises twenty-one claims in the Application. Upon initial review of the claims, the Court determined that Claims One, Three as it pertains to due process and double jeopardy, Four through Seventeen, and Twenty are procedurally barred from federal habeas review. Mar. 30, 2015 Part Dism. Ord. ECF No. 36. Also, Claims Eighteen and Twenty-One were found not to be cognizable in a federal habeas action. *Id.* The only remaining claims to be addressed on the merits are Claims Two, Three as it pertains to equal protection, and Nineteen. *Id.* Applicant presents these three claims as follows:

> (2)    Fourteenth Amendment violation by trial court in admitting a recording of a telephone call;

3

(3)     Equal protection violation due to the denial of presentence confinement credit based on his inability to pay a bond; and

(19)     Constitutional violations by trial judge's failure to recuse.

## II.  STANDARDS OF REVIEW

The Court must construe the Application and other papers filed by Applicant liberally because he is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not act as an advocate for a pro se litigant.  *See Hall*, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Applicant bears the burden of proof under § 2254(d).  *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim.  *Harrington v. Richter*, 562 U.S. 86, 98 (2011).  In particular, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."  *Id.* (collecting cases).  Thus, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-

law procedural principles to the contrary." *Id.* at 99.  "Where there has been one reasoned state judgment rejecting a federal claim," federal habeas courts should presume that "later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) (supported in *Hittson v. Chatman*, --- U.S. ---, 135 S. Ct. 2126 (June 15, 2015) (Ginsburg, J., concurring in denial of certiorari review).

Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* at 98. In other words, the Court "owe[s] deference to the state court's result, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, the Court "must uphold the state court's summary decision unless [the Court's] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178.  "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.*

The Court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  The threshold question the Court must answer under § 2254(d)(1) is whether Applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers

to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the

relevant state-court decision." *Id.* at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in
> cases where the facts are at least closely-related or similar to the
> case sub judice.  Although the legal rule at issue need not have had
> its genesis in the closely-related or similar factual context, the
> Supreme Court must have expressly extended the legal rule to that
> context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established federal

law, that is the end of the Court's inquiry pursuant to § 2254(d)(1).  *See id.* at 1018.

    If a clearly established rule of federal law is implicated, the Court must determine

whether the state court's decision was contrary to or an unreasonable application of that clearly

established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established
> federal law if: (a) "the state court applies a rule that contradicts the
> governing law set forth in Supreme Court cases"; or (b) "the state
> court confronts a set of facts that are materially indistinguishable
> from a decision of the Supreme Court and nevertheless arrives at a
> result different from [that] precedent." *Maynard* [*v. Boone*], 468
> F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and
> brackets omitted) (quoting *Williams*, 529 U.S. at 405).  "The word
> 'contrary' is commonly understood to mean 'diametrically
> different,' 'opposite in character or nature,' or 'mutually
> opposed.' " *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application
> of clearly established federal law when it identifies the correct
> governing legal rule from Supreme Court cases, but unreasonably
> applies it to the facts.  *Id.* at 407-08.

*House*, 527 F.3d at 1018.

    The Court's inquiry pursuant to the "unreasonable application" clause is an objective

inquiry.  *See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not issue the writ

simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly.  Rather that

application must also be unreasonable." *Id.* at 411.  "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671.  Furthermore,

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.  [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 562 U.S. at 101 (internal quotation marks omitted).  In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102.  In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 562 U.S. at 102 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 103.

The Court reviews claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2).

*See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002).  Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Applicant bears the burden of rebutting the presumption by clear and convincing evidence.  "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.' "  *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, the Court's analysis is not complete "[e]ven if the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law."  *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006).  "Unless the error is a structural defect in the trial that defies harmless-error analysis, [the Court] must apply the harmless error standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993) . . . ."  *Id.*; *see also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (providing that a federal court must conduct harmless error analysis under *Brecht* anytime it finds constitutional error in a state court proceeding regardless of whether the state court found error or conducted harmless error review).  Under *Brecht*, a constitutional error does not warrant habeas relief unless the Court concludes it "had substantial and injurious effect" on the jury's verdict.  *Brecht*, 507 U.S. at 637.  "[A] 'substantial and injurious effect' exists when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict."  *Bland*, 459 F.3d at 1009 (citing *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)).  "Grave doubt" exists when "the matter is so evenly balanced that [the Court is] in virtual equipoise as to the harmlessness of the error."  *O'Neal*, 513 U.S. at 435.  The Court makes this harmless error determination based upon a review of the entire state court record.  *See Herrera v. Lemaster*, 225

8

F.3d 1176, 1179 (10th Cir. 2000).  "In sum, a prisoner who seeks federal habeas corpus relief must satisfy *Brecht*, and if the state court adjudicated his claim on the merits, the *Brecht* test subsumes the limitations imposed by AEDPA."  *Davis v. Ayala*, 576 U.S. ---, 135 S. Ct. 2187, 2199 (2015) (citing *Fry*, 551 U.S. at 119-120).

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim de novo and the deferential standards of § 2254(d) do not apply.  *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

### III.  MERITS OF APPLICANT'S REMAINING CLAIMS

#### A.  Claim Two

Applicant asserts in Claim Two that the trial court erred by admitting a recording of a telephone call he made to the police at the suggestion of his parole officer.  ECF No. 1 at 9.  He further contends that he was not aware at the time of the call that he was a suspect in a crime and no Miranda warning was given.  *Id.*  Applicant concludes that as a result the improper admission of the recording influenced the jury's verdict and was in violation of his Fourteenth Amendment rights and Miranda protections. *Id.*

Respondents contend that the CCA's denial of this claim is a reasonable application of clearly established federal law and a reasonable determination of the facts.  ECF No. 39 at 13.

The CCA addressed the merits of this claim and reasoned as follows in rejecting the claim:

III.  Motion to Suppress

Defendant contends the trial court erred by denying his motion to suppress a recording of a telephone call he made to the police.  We disagree.

The trial court ruled that defendant's statements in the recorded telephone message were admissible because there was no

coercion and the statements were voluntary and an attempt to be exculpatory.

A trial court's suppression ruling presents a mixed question of fact and law.  We defer to the trial court's findings of fact, if supported by competent evidence in the record, but we review its conclusions of law de novo.  *People v. Medina*, 25 P.3d 1216, 1223 (Colo. 2001).  We will not set aside the trial court's findings of fact on the issue of voluntariness unless they are clearly erroneous.  *People v. Medina*, *supra*, 25 P.3d at 1223.

"[W]hen a defendant seeks to suppress a statement as involuntary, the prosecution must prove by a preponderance of the evidence that the statement resulted from a free and unconstrained choice."  *People v. Medina*, *supra*, 25 P.3d at 1222.  Courts determine whether a statement was voluntary by considering the totality of the circumstances surrounding the statement.  *People v. Medina*, *supra*, 25 P.3d at 1222.  "This inquiry includes weighing 'the circumstances of pressure against the power of resistance of the person confessing.' " *People v. Medina*, *supra*, 25 P.3d at 1222 (quoting *Dickerson v. United States*, 530 U.S. 428, 434, 120 S. Ct. 2326, 2331, 147 L. Ed.2d 405 (2000)).  Coercive physical or psychological conduct by the government renders an otherwise voluntary statement involuntary, if the conduct plays a significant role in inducing the statement.  *People v. Medina*, *supra*, 25 P.3d at 1222.  Without police conduct causally related to a confession, there is no basis for concluding that a statement is involuntary. *People v. Medina*, *supra*, 25 P.3d at 1222.

Defendant contends his taped telephone statement to the police was coerced and involuntary because his parole officer directed him to contact the police, and he was required to follow his parole officer's directives as a condition of parole.  We disagree.

Here, the record shows that defendant did not go to the police station to see the detective, as he had been instructed to do by his parole officer.  Instead, he telephoned the police detective and left a message on the answering machine, explaining that "they were trying to make it domestic violence," even though he and I.M. had explained that the incident was an accident and that he wanted to work out a resolution.

Further, although defendant's parole could have been revoked for not contacting the detective, the record shows defendant was not told by the parole officer that his parole would

be revoked if he did not incriminate himself.  He was only told to speak with the detective, a situation faced by many suspects.  In any event, according to the parole officer, defendant did not obey his directive to speak to the police detective in person, and did not even speak directly to the police detective over the telephone, but left a recording of his choice on the answering machine.  Thus, the record supports the trial court's finding that the statements were made of defendant's own volition, and that he made them in an attempt to exculpate himself.

We also agree with the trial court that there was no coercive conduct here.  We see nothing inherently coercive in a mere instruction by the parole officer, without more, to report and talk to the police detective.  *Cf. Minnesota v. Murphy*, 465 U.S. 420, 431-35, 104 S. Ct. 1136, 1144-46, 79 L. Ed.2d 409 (1984) (although probation officer could compel defendant's presence and truthful answers, the setting was not inherently coercive without arrest and without assertion that invocation of Fifth Amendment privilege would lead to revocation of probation); *People v. Elsbach*, 934 P.2d 877, 881 (Colo. App. 1997) (even if a probationer is required to submit to questioning, the Fifth Amendment right against compelled self-incrimination is not violated unless the state threatens to revoke probation on the basis of the invocation of that right).

Accordingly, we perceive no error in the trial court's denial of the motion to suppress.

Wallin, No. 04CA1011 at 9-13.

First, Applicant's reliance on Miranda is misplaced.  Applicant was not in custody for purposes of *Miranda*.  *See California v. Beheler*, 463 U.S. 1121 (1983).  A determination of whether a suspect is "in custody" for purposes of receiving *Miranda* protection is "simply whether a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."  *Id.* at 1125 (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)) (internal quotation marks omitted).  Applicant neither was under formal arrest, nor was he subject to a restraint of his freedom of movement associated with a formal arrest.  The statements at issue were left on a detective's answering machine while Applicant remained on parole.

11

Nonetheless, due process prohibits conviction of a defendant based, "in whole or in part, upon an involuntary confession." *Jackson v. Denno*, 378 U.S. 368, 376 (1964).  The Fifth Amendment also guarantees that "[n]o persons . . . shall be compelled in any criminal case to be a witness against himself." *Malloy v. Hogan*, 378 U.S. 1, 7 (1964) (citing *Bram v. United States*, 168 U.S. 532, 542 (1897)) (internal quotation marks omitted).  However, a "probation officer" can compel a parolee's "attendance and truthful answers," *Murphy*, 465 U.S. at 431, and a routine interview by a probation officer is not "transformed" into an inherently coercive setting simply because of the officer's authority to compel a parolee's attendance and to answer honestly, *id.*  In *Murphy*, the Court declined to require warnings in a probation officer's routine interview with a probationer because the "totality of the circumstances is not such as to overbear a probationer's free will," *id.* (citing *Rogers v. Richmond*, 365 U.S. 534, 544 (1961)).

The Court having reviewed the transcript for the January 13, 2004 Jury Trial Hearing and listened to the recording of the message Applicant left for Detective Belleau, *see* No. 03CR2296, People's Ex. 4, finds Applicant's statements were voluntary.  The statements Applicant left on the recorded message are exculpatory.  Applicant claims I.M.'s injuries were an accident, not a result of domestic violence, and that I.M. (who eventually recanted her inculpatory statement that Applicant hit her in the face and shoulder) now would claim it was an accident.  *See* No. 03CR2296, Ex. 4.  Applicant also did not follow his parole officer's direction to go to the Aurora Police Department to talk with Detective Belleau.  Detective Lehmann testified that, when he did talk with Applicant on the telephone, Applicant again provided exculpatory statements regarding the incident involving I.M., *see* Aug. 25, 2003 Prelim. Hr'g at 12 (Page 12 of CD transcript), and the only two inquiries Detective Lehmann made were "tell me what happened" and "did you strike her," *id.* at 13.  Finally, Applicant does not state in Claim Two, nor is it demonstrated in

the record, that he was told by the parole officer his parole would be revoked if he did not report to the Aurora Police Department to respond to possible questions regarding the assault on I.M.

Based on the record, Applicant fails to demonstrate his Fourteenth Amendment rights were violated.  Nothing in the record supports a finding that his statements were involuntary and a result of his parole officer coercing him to incriminate himself.  The CCA's decision regarding Claim Two is not contrary to or an unreasonable application of clearly established rule of federal law or an unreasonable determination of the facts in light of the evidence presented to the state court.  The Court, therefore, finds that Applicant is not entitled to relief in Claim Two.

## B.  Claim Three

With respect to the remaining portion of this claim, Applicant asserts that the trial court erred by denying him pre-sentence confinement credit in violation of his equal protection rights.  ECF No. 1 at 9.  Applicant contends that, when he was sentenced in the criminal case at issue here, he was not serving a sentence in any other case and the denial of the credit against the case at issue illegally extends his punishment.  *Id.*  Respondents assert that Applicant's argument (as identified in his opening brief, ECF No. 16-4 at 16-18) is a "technical, state-law argument that under Colo. Rev. Stat. § 17-2-103(6)(c), C.R.S. 2006, his parole hold tolled his parole and he was not serving any aspect of his previous sentence . . . ," and as a result "he was entitled to credit against his new sentence."  ECF No. 39 at 22-23.

The CCA addressed the merits of this claim and reasoned as follows in rejecting the claim:

V.  Presentence Confinement Credit

Because it will likely arise on remand for resentencing, we address and reject defendant's contention that the trial court erred by denying his request for presentence confinement credit (PSCC) for 250 days he spent in jail on parole hold prior to sentencing.

Whether the applicable statutory scheme authorizes PSCC is a question of law, which we review de novo. *See People v. Norton*, 63 P.3d 339 (Colo. 2003).

Section 18-1.3-405, C.R.S. 2006, provides in pertinent part:

> If a defendant is serving a sentence or is on parole for a previous offense when he or she commits a new offense and he or she continues to serve the sentence for the previous offense while charges on the new offense are pending, the credit given for presentence confinement under this section shall be granted against the sentence the defendant is currently serving for the previous offense and shall not be granted against the sentence for the new offense.

In *People v. Norton, supra*, the supreme court interpreted the scope of § 18-1.3-405 in a situation very similar to that presented here.  In *Norton*, a defendant on parole was arrested and charged with a new crime, jailed for sixty-nine days, received a new sentence to eighteen months, and then had his parole revoked.  Applying the plain language of § 18-.3-405, the supreme court determined that the sixty-nine days of PSCC should be applied to the term remaining on the defendant's mandatory parole period for the previous offenses, rather than credited to the new sentence. *See People v. Norton, supra*, 63 P.3d at 343-44.  The court reasoned that, because the previous sentence incorporate both the incarceration element and the parole component of the defendant's penalty, time that the defendant was incarcerated would apply to serving an aspect of the defendant's previous sentence. *See People v. Norton, supra*, 63 P.3d at 344; *see also People v. Hays*, 817 P.2d 546, 547 (Colo. App. 1991) (because defendant was on parole when he committed a new offense, whether he was in or out of physical confinement, he continued to serve out his previous sentence and could not receive PSCC for incarceration based on the new offense, even when his parole was not yet revoked).  In our view, the supreme court's holding in *Norton* is applicable here and dispositive of defendant's contention.

Relying on § 17-2-103(6)(c), C.R.S. 2006, defendant

argues, however, that because his parole officer filed a complaint and put him on parole hold, his parole was tolled.  He thus maintains that from that point to the date his parole was revoked, he was not serving any aspect of his previous sentence, and should receive PSCC on his sentence in this case.  We are not persuaded.

Section 17-2-103(6)(c) provides that the filing of a complaint by a parole officer tolls the expiration of the parolee's parole.  *Goetz v. Gunter*, 830 P.2d 1154, 1156 (Colo. App. 1992).  The statute's purpose in tolling the expiration of parole is to ensure that the parole board retains jurisdiction over whatever violation the defendant has committed.  *Duran v. Price*, 868 P.2d 375, 378 (Colo. 1994); *Goetz v. Gunter, supra*, 830 P.2d at 1156.  The tolling of the expiration of parole upon the filing of a violation complaint does not impose additional punishment.  *Goetz v. Gunter, supra*, 830 P.2d at 1156.

We conclude that § 17-2-103(6)(c) does not negate or change the general rule for applying PSCC set forth in § 18-1.3-405.  Rather, the filing of a parole revocation complaint merely provides jurisdiction to the parole board, but once the parole board makes its decision, the time starts running again from the date of the complaint whether the complaint is dismissed or parole is revoked.  This interpretation of the tolling provision in § 17-2-103(6)(c) gives reasonable and harmonious effect to § 18-1.3-405, which provides that a defendant receive PSCC on his or her original sentence and not the new sentence.  Therefore, we conclude that, pursuant to *Norton*, defendant's PSCC is to be applied to the term remaining on his mandatory parole period for his previous offense, and that the trial court properly did not award defendant PSCC in this case.

We also reject defendant's contention that, because he could not afford a bond while awaiting sentencing on the new charge and had to spend the time in jail, denial of PSCC here violated his rights to equal protection.  *Cf. People v. Norton, supra*, 63 P.3d at 347-48 (although parolees who are able to post bond and those who are not both receive credit for serving out their respective periods of mandatory parole resulting from their previous offenses, an inmate who remains incarcerated while awaiting sentencing on the new charge is properly credited with no "extra time" for the period of presentence confinement).

Because defendant's PSCC is to be applied to his previous sentence, we perceive no error in the trial court's denial of his request to amend the mittmus in this case crediting him with

PSCC.

*Wallin*, No. 04CA1011, at 18-22.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws," U.S. Const. amend XIV, § 1, and that all similarly situated persons should be treated a like by state actors, *see City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). The U.S. Supreme Court also has found there is a constitutional right to credit for presentence confinement to guarantee that an indigent person who is not able to post bond will not serve more time than an individual who has the means to post bond. *See Williams v. Illinois*, 399 U.S. 235 (1970). The Court specifically held that "the statutory ceiling placed on imprisonment for any substantive offense be the same for all defendants irrespective of their economic status." *Williams*, 399 U.S. at 244.

To state an equal protection claim, Applicant must allege: (1) that similarly-situated individuals were treated differently; and (2) either that the differential treatment was based on a suspect classification or fundamental right and not supported by a compelling government interest, or if the differential treatment was not based on a suspect classification or fundamental right, the differential treatment was not justified by a rational connection to a legitimate state interest. *Kleinsmith v. Shurtleff*, 571 F.3d 1033, 1047 (10th Cir. 2009). Applicant may also base differential treatment on a "class-of-one" theory if he was targeted in an "irrational [or] abusive" manner. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (single plaintiff intentionally treated differently from others and no rational basis for the difference in treatment).

The Constitution guarantees to all citizens certain fundamental rights. These rights "may

not be submitted to vote; they depend on the outcome of no elections," and are vested in every person under the authority of the Constitution. *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943). These rights were specifically articulated in the Bill of Rights and protect an individual from certain actions of the federal government through the Due Process Clause of the Fourteenth Amendment. *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833 (1992). The scope of review in federal habeas proceedings is limited to a deprivation of fundamental rights guaranteed by the Constitution when considering a claim of state court error. *See Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir. 1998); and it is well established that any "substantive" component to the Due Process Clause protects only "those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition,' " *United States v. Windsor*, 133 S. Ct. 2675, 2714-15 (2013) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–721, (1997).

Applicant's alleged denial of pre-sentence confinement credit is not deeply rooted in traditions or in the conscience of people as to be ranked as fundamental. Applicant does not state he is a member of a suspect class or that he intentionally was treated differently. Furthermore, as it applies to Applicant in this situation, "neither prisoners nor indigents constitute a suspect class warranting strict scrutiny review . . . ." *Harrison v. Bent County Correctional Facility*, 24 F. App'x 965, 967  (10th Cir. 2001) (citing *White v. Colorado*, 157 F.3d 1226, 1234 (10th Cir. 1998).

If "the challenged government action does not implicate either a fundamental right or a protected class" the Court applies a rational basis test. *Price-Cornelison v. Brooks,* 524 F.3d 1103, 1110 (10th Cir. 2008). To prevail on an equal protection claim, an applicant must show that the government has treated him differently than others who were similarly situated, *see*

*Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996), and allege sufficient facts to establish

that "the distinction between himself and other inmates was not reasonably related to some

legitimate penological purpose," *see Templeman v. Gunter,* 16 F.3d 367, 371 (10th Cir. 1994).

In *People v. Norton*, 63 P.3d 339, 343-45 (Colo. 2003), the CSC determined that § 18-

1.3-405 was intended to prevent duplicative presentence confinement credit and applies to all

class two through six felons who are subject to a mandatory parole, which is a separate

component of their sentence.  As a result, both those inmates who are able to post bail and those

who are not continue to receive credit for serving out the mandatory parole, which is in

compliance with *Williams'* statutory ceiling that an imprisonment for any substantive offense be

the same for all defendants irrespective of their economic status.  The Court, therefore, finds a

legitimate penological interest in crediting defendant's mandatory parole for the time detained

pending a criminal proceeding in a newly charged offense.

The fact that Applicant could not post a bond, was held over until the criminal

proceedings for his new offense were complete, and received credit for this confinement against

his mandatory parole in his first sentence, rather than the newly imposed sentence, does not

support a finding of a violation of his equal protection rights.  His detention and presentence

credit against his mandatory parole are reasonably related to legitimate penological interests; and

the credit he received against his mandatory parole was the same as that received by a defendant

who was able to post bond pending any criminal proceedings for a new offense.  The CCA's

decision regarding Claim Three is not contrary to or an unreasonable application of clearly

established rule of federal law or an unreasonable determination of the facts in light of the

evidence presented to the state court.  Applicant, therefore, is not entitled to relief in this claim.

**C.  Claim Nineteen**

In this claim, Applicant asserts that the trial judge violated his constitutional rights when she failed to disqualify herself once he had established her impartiality and impropriety in the associated criminal proceedings.  ECF No. 1 at 17.  Applicant further asserts that the continuances allowed in his criminal proceedings prejudiced him and caused multiple constitutional violations.  *Id.*  Respondents argue that the CCA's analysis is reasonable and correct, ECF No. 39 at 27, and Applicant's "notice" pleadings in Claim Nineteen are not sufficiently stated in compliance with the Advisory Committee Note to Rule 4, Rules Governing Habeas Corpus Cases Under Section 2254.  *Id.* at 28.

Regarding Claim Nineteen, the CCA found as follows:

## II. Recusal

Wallin asserts that the trial judge erred by not immediately recusing herself after he filed his motion with two supporting affidavits that alleged bias evidenced by a delay in the judge's ruling on Wallin's motion to vacate a restraining order against him. We disagree.

### A. Standard of Review

We review de novo whether a trial judge should have disqualified himself or herself.  *People v. Julien*, 47 P.3d 1194, 1197 (Colo. 2002).

### B. Analysis

A defendant has a constitutional right to an impartial judge, and therefore a judge must recuse himself or herself if he or she is biased against the defendant.  *Id.* at 1202.  A judge must also recuse himself or herself in circumstances of implied bias, even if the judge is convinced of his or her own impartiality.  *People v. Owens*, 219 P.3d 379, 386 (Colo. App. 2009).

However, it is the "judge's duty to sit on a case unless a reasonable person could infer from the facts that the judge would be prejudiced against a party."  *Id.*  "A reasonable person in this context is one who is a 'well-informed, thoughtful and objective observer, rather than [a] hypersensitive, cynical, and suspicious

person.' " *Id.* (quoting *People v. Schupper*, 124 P.3d 856, 858 (Colo. App. 2005), aff'd, 157 P.3d 516 (Colo. 2007)).

Section 16-6-201(3), C.R.S. 2012, provides the procedure for recusal in criminal cases. The section provides in part:

> A motion for change of judge on any ground must be verified and supported by the affidavits of at least two credible persons not related to the defendant, stating facts showing the existence of grounds for disqualification. If the verified motion and supporting affidavits state facts showing grounds for disqualification, the judge must enter an order disqualifying himself.

§ 16-6-201(3); see also Crim. P. 21(b). When evaluating a motion for recusal, a judge must accept as true the factual statements in the motion and affidavit. *Julien*, 47 P.3d at 1199.[2]  However, "a motion and affidavits are not sufficient if they contain only conclusory statements that the judge is biased." *Carr v. Barnes*, 196 Colo. 70, 73, 580 P.2d 803, 805 (1978).

> [2] In its order denying the motion to recuse, the trial court stated that it had "no knowledge of the affiants and [could not] state that they [were] credible."  This statement reflects an erroneous application of law.  An affiant's credibility is not at issue when initially determining whether a judge should disqualify himself or herself.  *Julien*, 47 P.3d at 1199.  Rather, the judge must accept as true all factual statements in the affidavits.  *Id.*  However, this error is harmless because in our de novo review we accept the facts in the affidavits as true and conclude that they are insufficient to warrant recusal.  *See* generally Crim. P. 52(a).

A judge's legal rulings generally cannot form grounds for recusal, even when erroneous.  *Walker v. People*, 126 Colo. 135, 145, 248 P.2d 287, 293 (1952); *People in Interest of S.G.*, 91 P.3d 443, 447 (Colo. App. 2004).  Even an opinion as to the guilt or innocence of a criminal defendant is generally not a basis for disqualification." *Watson v. Cal-Three, LLC*, 254 P.3d 1189, 1192 (Colo. App. 2011).

In *Carr*, the defendant moved to recuse the trial judge.  196 Colo. at 74, 580 P.2d at 805.  His supporting affidavits stated that

the trial judge refused to hear the defendant's motion for a stay of execution, which was not on the docket for that day. *Id.* The affidavits also included numerous conclusory statements regarding the judge's lack of impartiality in light of the refusal to hear the motion. *Id.* The supreme court held the defendant presented insufficient objective evidence to show that the judge harbored bias. *Id.* The court noted that even though the refusal to hear the motion may have been an abuse of discretion, it did not evidence bias against the defendant. *Id.*

Here, Wallin's motion to recuse and the corresponding affidavits asserted (1) that he submitted a motion to vacate all restraining orders against him; (2) that the court took over 120 days to schedule a hearing on the motion; (3) that three hearings were canceled because the judge did not issue orders to transport Wallin to the hearings from prison; (4) that the judge did not provide Wallin with notice of the hearings; (5) that it took many months to vacate the restraining order; and (6) that this delay caused Wallin and his family hardship and anguish. The motion and affidavits also alleged summarily that the judge harbored bias against Wallin.[3]

[3]Wallin's motion also stated that it incorporated the facts from his first motion to recuse the judge, which he had filed two and a half years earlier. However, the first motion had already been ruled on by the trial court and is not part of this appeal. Accordingly, we limit our consideration to the facts asserted in connection with the motion before us.

Assuming the allegations to be true, we conclude they would not cause a reasonable person to believe that the trial judge harbored bias against Wallin. Rather, Wallin's motion is analogous to that in *Carr*, because its allegations are based solely on the judge's rulings and official actions. *See* 196 Colo. at 74, 580 P.2d at 805. Thus, even if we assume the delay in the hearings was erroneous, the rulings of the trial judge cannot support an inference of bias when standing alone. *Id.*; *S.G.*, 91 P.3d at 447.

Here, the subjective statements in Wallin's affidavits do not support a finding of bias. Both affiants stated that after reviewing the case, they concluded that the judge harbored bias against Wallin. However, neither affiant supported his conclusion with objective evidence beyond the delay in deciding the motion to vacate the restraining order.

> Accordingly, the objective facts in Wallin's motion and affidavits do not sufficiently allege bias so as to require recusal of the trial judge under section 16-6-201(3). Therefore, the judge did not err in denying the motion.

*People v. Wallin*, No. 11CA0972, 2-7 (Colo. App. Dec. 6, 2012).

The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of the case. *See Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997). It is generally recognized, however, that "due process compels recusal only when the biasing influence is so strong that the court may presume actual bias." *United States v. Mansoori*, 304 F.3d 635, 667 (7th Cir. 2002) (quotation marks and citations omitted), *cert denied*, 538 U.S. 967 (2003). An accusation of bias grounded in prior judicial rulings against a party almost never demonstrates partiality requiring a judge's recusal. *See Liteky v. United States*, 510 U.S. 540, 555 (1994).

"[N]ot '[a]ll questions of judicial qualification . . . involve constitutional validity. Thus, matters of kinship, personal bias, state policy, remoteness of interest, would seem generally to be matters merely of legislative discretion." *See Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 820 (1986) (quoting *Tumey v. Ohio*, 273 U.S. 510, 523 (1927)). Under this standard, only a few situations have been found where a judge's impartiality might be so impaired as to violate due process, and these situations include a showing of actual bias, *In re Murchison*, 349 U.S. 133, 136 (1955), or where the judge has a direct financial interest in the outcome of the case, *Tumey*, 273 U.S. at 523. Beyond these narrow circumstances, the requirements for recusal are normally governed by statute. *Aetna*, 475 U.S. at 820.

The review under Colorado law for judicial disqualification of a judge is limited as well. Under Colo. Rev. Stat. § 16-6-201(1) the standards for evaluating a motion for a change of judge are as follows:

(1) A judge of a court of record shall be disqualified to hear or try a case if:

(a) He is related to the defendant or to any attorney of record or attorney otherwise engaged in the case: or

(b) The offense charged is alleged to have been committed against the person or property of the judge or of some person related to him; or

(c) He has been of counsel in the case; or

(d) He is in any way interested or prejudiced with respect to the case, the parties, or counsel.

Affidavits of disqualification must allege personal rather than judicial bias, must show facts indicating the existence of the personal bias, and they must include more than mere conclusions. *United States v. Bray*, 546 F.2d 851, 857 (10th Cir. 1976).

Because the CCA found that Applicant's claims pertain only to rulings by the trial judge and his affidavits failed to present objective evidence of personal bias and prejudice, and because the claim Applicant has presented in this Court fails to assert any facts that indicate the existence of the trial judge's personal bias and prejudice, Applicant has not shown a bias influence so strong that the court may presume actual bias in violation of his due process rights. The CCA's decision regarding Claim Nineteen is not contrary to or an unreasonable application of clearly established rule of federal law or an unreasonable determination of the facts in light of the evidence presented to the state court. The Court, therefore, finds that Applicant is not entitled to relief in Claim Nineteen.

## IV.  CONCLUSION

In summary, the Court finds that Applicant is not entitled to relief on any of his remaining claims. Accordingly, it is

**ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. §

2254, ECF No. 1, is denied and this case is dismissed with prejudice.  It is further

  **ORDERED** that there is no basis on which to issue a certificate of appealability pursuant

to 28 U.S.C. § 2253(c).  It is

  **ORDERED** that leave to proceed in forma pauperis on appeal is denied. The Court

certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken

in good faith.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  If Applicant files a notice of

appeal he must also pay the full $505 appellate filing fee or file a motion to proceed in forma

pauperis in the United States Court of Appeals for the Tenth Circuit within thirty days in

accordance with Fed. R. App. P. 24.

  DATED July 21, 2015.


      BY THE COURT:


      _____
      Marcia S. Krieger
      Chief United States District Judge